# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

ROSETTA BIGGINS,   Case No.

   Hon.

   Plaintiff,

v.

THE DOW CHEMICAL COMPANY,

   Defendant.

## COMPLAINT

COMES NOW Plaintiff, ROSETTA BIGGINS, and files her Complaint against Defendant, THE DOW CHEMICAL COMPANY, requesting relief as set forth below.

## JURY DEMAND

Plaintiff, by and through her attorneys, hereby demands a trial by jury on all issues so triable.

## NATURE OF THE CLAIMS

1. This is an action for racial discrimination, gender discrimination, retaliation, and hostile work environment under 42 U.S.C. § 1981 and Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), M.C.L. § 37.2101 et seq.

1

Plaintiff seeks compensatory and exemplary damages, equitable relief, attorney fees, lost wages, and other relief due to the unlawful employment practices of Defendant, The Dow Chemical Company.

## PARTIES

2. Plaintiff, Rosetta Biggins, is a Saginaw, Michigan resident who was employed by Defendant, The Dow Chemical Company.

3. Defendant, The Dow Chemical Company, is a Delaware corporation with its principal place of business in Midland, Michigan, conducting business in the Eastern District of Michigan.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343 and supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

5. Venue is proper in this district under 28 U.S.C. § 1391 because the events giving rise to Plaintiff's claims occurred within this judicial district, and Defendant conducts substantial business in this district.

## INTRODUCTION

6. Defendant Dow has a long history of harassing and discriminating against Black people and women, which has permeated for many years and has gone unchecked while its employees have suffered in silence.

7. While Dow will likely deny that it does so, it is clear that the company has a pattern and/or practice of mistreatment of Black men and women, and women generally of all races, and that Dow's agents have sought to threaten and intimidate Dow employees who have tried to come forward, in an attempt to silence them and keep them from coming forward.

## FACTUAL ALLEGATIONS

8. Rosetta Biggins began working at Dow Chemical Company in July 2022 as an LT1 in the production area of Building 501. At that time, her supervisor was Joe Bushre, who was later terminated following a legal incident reported in the news.

9. Biggins was informed that employees didn't have to wait long to move up to an LT2 role if they could learn the necessary machines within 30 days.

10. With her prior plant experience, including forklift operation and machine handling, she was confident in her ability to advance quickly.

11. As the only Black female in her work area, Biggins was trained by a male trainer who initially taught her the basics.

12. Once she felt prepared, she approached Joe to begin training for the LT2 position. Joe asked her to stay on the floor for an additional week to make sure she had fully learned everything.

13. Biggins' trainer remarked to her that he could "make things happen without people knowing it's happening."

14. The trainer spent more time training a new white male employee for the LT2 role than he spent training Biggins, despite her already having the skills and experience for the job.

15. The trainer continually delayed Biggins' LT2 training, repeatedly telling her that he intended to train her but never actually following through.

16. After a week, the LT2 position was awarded to a new white male trainee. A second LT2 position later opened, but it was given to another white male employee.

17. Biggins felt excluded as the only woman in the group and believed that her trainer was deliberately preparing the younger white male employees for advancement while disregarding her readiness for the LT2 role.

18. Biggins and another mixed-race/Black male coworker were also assigned menial tasks, such as shoveling snow for other personnel to walk through. These tasks were not required of their white coworkers.

19. During a break in the cafeteria, Biggins encountered another Black employee who commented, "Oh, I see they ended up hiring another one of us," underscoring the isolation she felt as one of the few Black employees in her work area.

20. The work environment caused Biggins substantial anxiety. She noticed that while her responsibilities increased as she learned more, her job did not become easier.

21. There were incidents where her work appeared to be sabotaged, such as white employees placing incorrect labels in an effort to have her written up.

22. Biggins complained about the lack of fair training, stating that if all employees were trained equally, mistakes and mishaps could be avoided.

23. Her trainer expressed frustration over being expected to train others without additional pay. The trainer kept Biggins in the same position, despite her supervisor's initial statement that she needed only one more week before advancing.

24. She was repeatedly told that moving up would not be possible for her, even though other operators with longstanding connections at Dow, including family ties, appeared to receive preferential treatment.

25. The new LT2 hire had no prior forklift experience, unlike Biggins, who was already skilled in that area.

26. Biggins shared her concerns with Joe, explaining that she felt it was unfair and based on gender discrimination.

5

27. Joe asked her if she intended to continue working there, to which Biggins replied that she believed her lack of advancement was due to her being a woman and Joe's perception that she was incapable of the work.

28. Biggins observed a pattern where Dow would only hire a limited number of Black employees at a time, further isolating her and creating a sense of exclusion and isolation. She did not see any Black employees get the same promotions that white employees received.

29. Throughout her time at Dow, her trainer made comments that the LT2 role "was not a woman's job" and expressed his belief that women were not capable of performing the tasks required.

30. Plaintiff eventually resigned when it became clear that she was not going to ever advance in the company.

31. Plaintiff requests relief and damages, as set forth herein.

## COUNT I

## RACIAL DISCRIMINATION IN VIOLATION OF 42 USC § 1981

32. Plaintiff hereby incorporates by reference the preceding paragraphs of this Complaint, as if fully set forth herein.

33. 42 USC § 1981 prohibits employers from intentionally discriminating against individuals, including employees, in the making and enforcement of contracts.

6

34. Defendant's discrimination against Plaintiff as described above is in violation of the rights of Plaintiff afforded her by the U.S. Constitution and the Civil Rights Act of 1866, 42 USC § 1981, as amended by the Civil Rights Act of 1991.

35. By the conduct described above, Defendant intentionally deprived Plaintiff of the same rights as are enjoyed by individuals who are non-African American, to the creation, performance, enjoyment, and all benefits and privileges of their contractual employment relationship with Defendant, in violation of 42 U.S.C. § 1981.

36. The intentional discrimination on the basis of Plaintiff's race by Defendant that Plaintiff has experienced includes harassment and Defendant's refusal to promote her or treat her like other non-Black employees, which broke the contract between the parties.

37. The actions of Defendant and its agents were willful, intentional, in deliberate disregard of and with reckless indifference to the rights and sensibilities of Plaintiff.

38. As a direct and proximate result of those actions, the terms, conditions, and privileges of Plaintiff's employment were adversely affected.

39. As a direct and proximate result of Defendant's wrongful acts, Plaintiff sustained injuries and damages including, but not limited to, loss of earnings

and earning capacity, loss of career opportunities, loss of fringe and pension benefits, outrage and humiliation, mental anguish, anxiety about her future, physical and emotional distress, and loss.

## COUNT II
## RETALIATION IN VIOLATION OF THE MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT, MCL 37.2101 et seq. ("ELCRA")

40. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

41. At all material times, Plaintiff was an employee, and Defendant was her employer covered by, and within the meaning of, the ELCRA.

42. A respondeat superior relationship existed because agents of Defendant had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct all of Plaintiff's daily work activity.

43. Defendant's conduct, as alleged herein, violated the ELCRA which makes it unlawful to retaliate against an employee who has engaged in protected activity.

44. Plaintiff engaged in protected activity, as more fully laid out in the statement of facts, including speaking up about gender discrimination and harassment.

45. Defendant, through its agents, had knowledge that Plaintiff engaged in protected behavior because she reported the issue directly to agents of Defendant.

46. After Plaintiff engaged in protected activity, Defendant's agents thereafter took adverse employment actions against Plaintiff, as alleged in the statement of facts, including failing to promote and eventually terminating her.

47. Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard of Plaintiff's rights.

48. Plaintiff notified Defendant and its agents of the unwelcome conduct and communication; however, Defendant failed to remedy the same.

49. As a proximate result of Defendant's discriminatory and retaliatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

50. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proved at trial.

51. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT III

### GENDER HARRASMENT/DISCRIMINATION IN VIOLATION OF ELCRA

52. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

53. At all material times, Defendant was an employer covered by, and within the meaning of the Elliott-Larsen Civil Rights Act ("ELCRA"), as amended.

54. Defendant's conduct, as alleged herein, violated ELCRA, which makes it unlawful to harass or discriminate against an employee on the basis of gender.

55. A respondeat superior relationship existed because Plaintiff's supervisors, had the ability to undertake or recommend tangible decisions affecting Plaintiff or the authority to direct Plaintiff's daily work activity as alleged in the statement of facts.

56. Plaintiff is a woman and a member of a protected class.

57. Plaintiff was subjected to communication or conduct on the basis of her gender, as indicated in the facts above.

58. Male employees who worked for Defendant harassed Plaintiff, and did not treat other male employees in the same manner.

59. The communication and conduct from the employees was unwelcomed.

60. The unwelcomed conduct or communication was intended to or in fact did substantially interfere with the Plaintiff's employment or created an intimidating, hostile, or offensive work environment as alleged in the statement of facts.

61. Plaintiff notified Defendant and/or Defendant's agents of the unwelcomed conduct and communication and Defendant failed to remedy the unwelcomed conduct or communication.

62. As a direct and proximate result of Defendant's and Defendant's agent's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits and has suffered mental anguish, emotional distress, humiliation and embarrassment, loss of professional reputation, and was terminated.

## COUNT IV

## DISCRIMINATION ON THE BASIS OF RACE IN VIOLATION OF ELCRA

63. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

64. At all material times, Defendant was an employer and Plaintiff was an employee covered by, and within the meaning of, ELCRA.

65. Defendant's conduct, as alleged herein, violated the ELCRA, which makes it unlawful to harass or discriminate against an employee on the basis of that employee's race or skin color.

66. Plaintiff is a Black woman, and, as a result, is a member of a protected class pursuant to ELCRA.

67. Plaintiff was subjected to offensive communication and/or conduct on the basis of her membership in this protected class, up to and including being isolated, not trained properly, and refusing to promote her.

11

68. Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Plaintiff's rights.

69. The unwelcomed conduct and communication was intended to and in fact did substantially interfere with Plaintiff's employment and created an intimidating, hostile, and/or offensive work environment as alleged in the statement of facts.

70. As a direct and proximate result of the Defendant's wrongful acts and omissions, Plaintiffs have sustained loss of earnings, earning capacity, and fringe benefits and have suffered mental anguish, emotional distress, humiliation and embarrassment, and loss of professional reputation.

71. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT V
## HOSTILE WORKPLACE ENVIRONMENT IN VIOLATION OF THE ELCRA

72. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

73. At all material times, Plaintiff was an employee, and Defendant was her employer covered by, and within the meaning of, the ELCRA.

74. A respondeat superior relationship existed because agents of Defendant had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct all of Plaintiff's daily work activity.

75. Defendant's conduct, as alleged herein, violated the ELCRA which makes it unlawful to create a work environment that a reasonable person would consider intimidating, hostile, or abusive, on the basis of their membership in a protected class.

76. Plaintiff is a member of a protected class as a woman.

77. Plaintiff's work environment, as alleged in the statement of facts made it so that the work environment was unworkable.

78. Moreover, Plaintiff's continual attempts to have the situation remedied, coupled with Defendant ignoring Plaintiff's complaints made the situation untenable.

79. Additionally, Defendant treated female employees such as Plaintiff in a hostile, intimidating, and offensive way, as stated herein, and made clear that it did not believe women were capable of doing Plaintiff's job and that it did not want her there.

80. The unwelcomed conduct and communication was intended to, or in fact did, substantially interfere with Plaintiff's employment, and created an

intimidating, hostile, or offensive work environment, as alleged in the statement of facts.

81. As a direct and proximate result of Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

82. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

83. Plaintiff requests relief as described in the Prayer for Relief below.

## RELIEF REQUESTED

PLAINTIFF, ROSETTA BIGGINS, respectfully requests that this Honorable Court enter judgment against Defendant as follows:

1. Compensatory damages in whatever amount to which Plaintiff is entitled;
2. Exemplary damages in whatever amount which Plaintiff is entitled;
3. An award of lost wages and the value of fringe benefits, past and future;
4. An award of interest, costs, and reasonable attorney fees; and
5. An order awarding whatever other equitable relief appears appropriate at the time of final judgment.

Dated: November 7, 2024    Respectfully Submitted,

CARLA D. AIKENS, P.L.C.

/s/ Carla D. Aikens
Carla D. Aikens (P69530)
615 Griswold St., Ste. 709
Detroit, MI 48226
carla@aikenslawfirm.com
*Attorneys for Plaintiff*